1      IN THE UNITED STATES DISTRICT COURT
       FOR THE DISTRICT OF PUERTO RICO

2

3

4 ING INSURANCE SA, GOTHAER
 VERSICHERUNGEN AG, GREAT
5 LAKES, REINSURANCE (UK) PLC
 AND LLOYD'S OF LONDON,
6

7 Plaintiffs

8 v.

9               CIVIL 04-1023 (ADC)
 WILLIAM PAGÁN SÁNCHEZ,
10 CARMEN MALDONADO VENTURA
 AND THEIR CONJUGAL
11 PARTNERSHIP,

12 Defendant/Third-Party Plaintiffs

13 v.

14

15 CARIBBEAN BOAT MFG & SERVICES,
 INC. D/B/A SEA RESCUE OR VESSEL
16 ASSIST PUERTO RICO, INSURANCE
 COMPANY XYZ, JOHN DOE,
17

18 Third-Party Defendants

19

20    MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

21   This matter is before the court on a motion to dismiss filed on October 10,

22 2005 by defendants William Pagán Sánchez, Carmen Maldonado Ventura and their

23 conjugal partnership.  (Docket No. 97.)  On October 24, 2005 plaintiffs ING

24 Insurance SA, Gothaer Versicherungen AG, Great Lakes Reinsurance (UK) PLC and

25 Lloyd's of London filed an opposition to the motion to dismiss.  (Docket No.101.)

26 A reply to plaintiffs' opposition was filed by the defendants on November 9, 2005.

27 (Docket No. 107.)  On December 1, 2005 plaintiffs filed a surreply to defendants'

28 reply.  (Docket No. 113.)  This matter was referred to me for report and

CIVIL 04-1023 (ADC)                              2

recommendation on November 29, 2005.[1] After considering the evidence in record, the applicable law and for the reasons set forth below, I recommend that defendants' motion to dismiss be DENIED.

I.

This court has jurisdiction over the subject matter under 28 U.S.C. § 1333(1) in that the complaint involves the rights and obligations of the parties under a marine insurance contract.

> On January 26, 2005, plaintiffs filed an amended complaint for declaratory judgment, seeking that this court determine that the marine insurance policy issued to defendants does not afford coverage for the loss, salvage operation and dry dock fees of the insured motor vessel "GABRIELLA", due to the defendants' breach of warranties and conditions contained in the policy. (Docket No. 63.)  An answer to the amended complaint and counterclaim were filed by defendants on February 16, 2005. (Docket No. 67.)  A third-party complaint was brought by defendant Pagán against Caribbean Boat MFG & Services, Inc.  (Docket No 29.)  An amended answer and counterclaim against defendant Pagán, was filed on August 19, 2005. (Docket No. 83.)[2]

II.

The following facts are based on the amended complaint, and are related in my report and recommendation regarding the motion for summary judgment.

A. Insurance policy

> ING Insurance SA is a corporation organized and existing under the laws of Belgium, with its office and principal place of business located in Brussels.  ING has a participation of 20% in the hull risks insured under the

---

[1]      In the same order I was also referred a motion for summary judgment, brought by plaintiffs, which raised issues relating to allegations that defendants breached provisions in the marine insurance policy. (Docket No. 79.) On April 5, 2006 I recommended the motion be denied. (Docket No. 118, at 2, ¶ 3.)

[2]      See my report and recommendation. (Docket No. 118, at 2, ¶ 3.)

1  CIVIL 04-1023 (ADC)                             3

2

3              policy in controversy.  (Docket No. 63-1, at 2, ¶ 4.)  Co-
4              plaintiff Gothaer Versicherungen, is a corporation or
               other business entity organized and existing under the
5              laws of the Federal Republic of Germany, with its official
               and principal place of business located in Germany.
6              Gothaer holds a participation of 30% in the hull risks
               insured under the policy.  (Id. ¶ 5.)  Co-plaintiff Great
7              Lakes Reinsurance (UK) PLC, is a public limited company
               organized and existing under the laws of England, with
8              its office and principal place of business located in
               London.   Great Lakes' participation in the hull risk
9              insured under policy is 50%.  (Id. ¶ 6.)  Co-plaintiff
               Lloyd's of London is a corporation or other business
10             entity organized and existing under the laws of the United
               Kingdom, with its office and principal place of business
11             located in London, United Kingdom.  Lloyd's participation
               in the protection and indemnity or liability risks insured
12             under the policy is 100%.  (Docket No. 63-1, at 2-3, ¶ 7.)
               Defendants  William  Pagán  Sánchez  and  Carmen
13             Maldonado Ventura are citizens of the United States and
               residents of Puerto Rico.  (Id. ¶ 8.)

14
               On or about January 29, 2003, defendant William
15             Pagán Sánchez submitted via his insurance broker an
               application form requesting marine insurance coverage.
16             (Id. at 3, ¶ 9.)[3]

17      Plaintiffs subsequently issued to the defendants the marine insurance Policy

18  No. 200/658/43339.  (Docket No. 63, at 3, ¶ 11.)

19      B.  Motion to dismiss

20      On July 19, 2003 (for reasons that are in dispute) the GABRIELLA sank

21  causing an alleged total loss of the vessel.  (Id. at 5, ¶ 20.)

22      In the original complaint ING Groep NV and Lloyd's of London were named

23  as plaintiffs. Subsequently, underwriting agent TL Dallas ("TLD") was informed by

24  Belmarine SA that the named plaintiff ING Groep IV was not an insurance

25  company but in fact a holding company.  (Docket No. 61, Ex. 1, at 2, ¶ 6.)

26  Furthermore, it was made known by Belmarine that the true insuring participants

27  _____

28      [3]    See supra, note 2, at 3, ¶ 1.

CIVIL 04-1023 (ADC)                                    4

in the policy were ING Insurance SA, Gothaer Versicherungen AG, Great Lakes Reinsurance with each holding the aforementioned percentage interests in said policy.  ( Docket No. 61, Ex. 1, at 2, ¶ 7.)  In light of this emerging information, plaintiffs filed a motion to  amend the complaint to reflect the true parties in interest. (Docket No. 61.)  The  motion was granted and plaintiffs' attorneys filed an amended complaint.  (Docket Nos. 62, 63.)

Defendants filed a motion to dismiss[4] the amended complaint alleging that the present action is a nullity and that the named plaintiff in the original complaint, ING Groep NV, did not authorize the instant lawsuit.  The defendants argue that plaintiffs knowingly misled them and the court into agreeing to the amended complaint on behalf of a new plaintiff in an attempt to cure a fatally flawed complaint which was filed without authorization from the party who appeared as plaintiff, ING Groep NV, and to amend the contractual relationship between the parties.  The defendants refer to the admission by plaintiffs in another case (represented by the same attorneys) that the filing was unauthorized by ING Groep NV.  Counsel relied on TL Dallas' representation that the policy had been issued by ING Groep NV.  The defendants note that plaintiffs' counsel were aware of the lack of standing of ING Groep NV to file the lawsuit several months prior to moving to amend the complaint.  However, no attempt was made to inform the defendants or the court of this information.  Rather they continued to appear before the court as representing ING Groep NV until they were able to cure the defect in the original filing through a procedural slight of hand they represented

---

[4]      Defendants also filed a motion to stay the proceedings, making substantially the same arguments as in the instant motion to dismiss. (Docket No. 93.)  I issued an order denying the motion to stay on November 30, 2005. (Docket No. 112.)

CIVIL 04-1023 (ADC)                5

as an amendment to correct a "misnomer."   The defendants argue that the Pagán policy contract was thus amended ex post facto with his consent in order to bring in the supposedly "correct" insurers.  The defense was at all times led to believe that there was enough  identity of interest between ING Groep NV and the new plaintiffs that made an amendment warranted.  In August 2004, plaintiffs' counsel was informed for the first time that ING Groep NV was not an insurer of marine policies.  Indeed, ING Groep NV allegedly appears to be a Netherlands insurance company.

Defendants contend that in an attempt to cure an otherwise unauthorized complaint plaintiffs amended the complaint to add a correct party in place of ING Groep NV.  (Docket No. 97, Motion to Dismiss, at 1, ¶ 3.)  Specifically, defendants allege that the course of action for the attorneys for plaintiffs should have been to come clean as soon as they found out that they had filed an action on behalf of a person without authorization, and that they should have either moved the court to dismiss the complaint and filed again or informed defendants' counsel of the mistake with candor, and to try to reach some agreement after discussing which procedural course of action to take.  (Id. at 6, ¶ 2.)[5]  The defendants argue that plaintiffs' counsel chose to cover-up their client's mistake by misrepresenting the situation, and consequently misled the court and the parties in curing an

---

[5]    Defendants also cite to López-Lotti v. ING Ins. S.A., Civil 04-1586 (HL). They contend that counsel for plaintiffs in that case notified attorneys for defendants in the instant case the status of ING Groep IV as a non-party.  In so doing, defendants fail to make a showing how that case bears any similarity to this case. Moreover, the parties in the López case resolved out the misstatement of ING Groep IV as plaintiffs by realigning the parties at a status conference before ultimately settling the civil action. (Civil No. 04-1586 (HL), Docket No. 145, at 1-2, ¶¶ 1-4; Docket No. 152.)

CIVIL 04-1023 (ADC)                          6

essentially incurable defect. The defendants conclude that the motion to amend the complaint was actually a motion for substitution of parties but it could not be presented as such since ING Groep NV had no contractual relationship or other interest with the defendants that could be transferred to ING Insurance SA, Gothaer Versicherungen, and Great Lakes Reinsurance (UK). They thus argue that the case should be dismissed as a nullity.

Plaintiffs respond that after Lloyd's and ING Groep NV (hull underwriter) filed this case against the defendants, the attorneys were advised of a clerical mistake concerning the designation of the hull underwriters in the policy of marine insurance object of this action and immediately sought leave to amend the complaint to correct the identity of the proper hull underwriter. Plaintiffs stress that it is incorrect to assume that since ING Groep never authorized the filing of the complaint, the case was filed without authorization. Complete disclosure of the mistake was made on January 26, 2005, the earliest possible time.[6] That is the day that plaintiffs' counsel received an unsworn statement under penalty of perjury setting forth the details of the nature of the error concerning the designation of insurers in the Policy Cover Note. The hull underwriters in this case are ING Insurance SA (20%), Gothaer Versicherungen AG (30%), Great Lakes Reinsurance (UK) PLC (50%), of 100% of limits and amounts. ING Groep NV is a holding company and not an insurance company. However, because another company, which was represented by Belmarine SA, a marine underwriting agency domiciled in Belgium, had been an operating company of ING Insurance SA who in turn was

---

[6]     Here plaintiffs claim that after they received notification of the misnomer of plaintiff they filed their "motion for leave to file amended complaint" the next day. (Docket No. 101, at 5.)

CIVIL 04-1023 (ADC)                    7

a member of ING Groep NV, a company registered in Holland, it was mutually understood that the correct security should read ING Groep NV for business previously written and accepted under the contract in the name of the other company, La Patriotique SA/De Vaderlandsche NV.  Thus, due to a clerical error, TLD issued the policies in the name of ING Groep NV, which was not the correct identification of the insurer which should have been ING Insurance SA.  Therefore, neither the court nor the parties were misled.  Plaintiffs note that the defendants continue to believe that TL Dallas is the real client.  However, TL Dallas is a marine underwriter and claims managing company, and is the agent of several disclosed principals including the underwriters that currently figure in this action as plaintiffs.  The attorneys have always been authorized to file this action on behalf of the appearing parties but due to the clerical error in the Policy Cover Note, the original complaint was filed in the name of the incorrect hull underwriter as co-plaintiff.  Plaintiffs also argue that the customs of the marine insurance industry and the unique relationships that exist between marine insurers, claims underwriting and managing companies and attorneys is a valid reason for the confusion reflected in this case.  Claims managers carry out the investigation after a loss and adjust, settle and/or dispute claims.  This is precisely TLD's involvement in this case.  TLD instructed counsel to file the lawsuit under a Cover Note showing ING Groep NV as sole hull underwriter.  TLD however was representing ING Insurance SA, Gothaer Versicherungen AG, and Great Lakes Reinsurance (UK) PLC. The defendants submitted the notice of the loss to TLD on July 22, 2003. The attorneys have always been authorized by TLD acting as claims manager on behalf of the Policy's third-party liability insurer Lloyd's of London and the hull insurers ING Insurance SA, Gothaer Versicherungen AG, and Great Lakes Reinsurance

CIVIL 04-1023 (ADC)                    8

(UK) PLC to file the complaint but because of the error, the three correct hull underwriters were originally left out.  Plaintiffs argue that the simplest, logical and most sensible way to correct the mistake was to seek an amendment to the original pleading under Rule 15, Federal Rules of Civil Procedure.

Plaintiffs also argue that the defendants have consented to the substitution of ING Groep NV for the three correct hull underwriters in their answer to the first amended complaint.  (Docket No. 66, at 3, ¶ 12.)  Plaintiffs argue that the defendants have shown their acquiescence to the amendment by failing to take any actions during several months in relation to the issue of amendment after having been informed of the error.  For example, the defendants have made written discovery requests to the three correct hull underwriters and did not object to answers to interrogatories.  Finally plaintiffs argue that the doctrine of laches prevents the defendants belated request for dismissal because of the unreasonable delay (nine months) or negligence in asserting the claim.

The defendants retort that the admissions on the part of plaintiffs speak for themselves, that is, that the attorneys filed a complaint on behalf of an entity who had not authorized the same, and that Lloyd's of London has been a proper party from the beginning, although a reading of complaint reflects that there is no pleading regarding third-party liability.[7]  Plaintiffs' sur-reply notes that the sinking of the M/V GABRIELLA places at risk the Policy's third-party liability coverage written by co-plaintiff Lloyd's of London, since the third-party liability coverage is designed to cover valid claims, including the costs of wreck removal and salvage operations.  Plaintiffs stress that it is a well-recognized principle that P&I coverage

---

[7]    Both parties discuss the law of the case but I do not enter such discussion.

1    CIVIL 04-1023 (ADC)                              9

2

3    requires that a vessel be a wreck in order for wreck removal to be covered.

4    Plaintiffs argue that since co-plaintiff Lloyd's of London authorized the filing of the

5    complaint and has actively participated in the proceedings, the defendants'

6    arguments are meritless.

7                                            III.

8            The defendants' central argument is that upon discovering the alleged

9    discrepancy at issue, the plaintiffs should have dismissed the case and filed a new

10   complaint or contacted defendants' attorneys to decide which procedural coarse of

11   action to take.  (Docket  No. 97-1, at 6, ¶ 2.)  To the contrary, plaintiffs rely on a

12   correct application of Rule 15 of the Federal Rules of Civil Procedure as the most

13   appropriate rule to resolve the present issue.

14           Under the "relation back doctrine," whenever "the claim or defense asserted

15   in the amended pleading arose out of the conduct, transaction, or occurrence set

16   forth or attempted to be set forth" an amendment relates back to the date of the

17   original pleading.  An amendment changing the party against whom a claim is

18   asserted relates back "if the forgoing provision . . . is satisfied and, within the

19   period provided by [law] for" commencing the action against him, "the party to be

20   brought in by amendment [(1)] [h]as received such notice of the institution of the

21   action that [he] will not be prejudiced in maintaining [his] defense on the merits

22   and (2) knew or should have known that, but for a mistake concerning the identity

23   of the proper party, the action would have been brought against [him]."  Fed. R.

24   Civ. P. 15(c).  Additionally, although the relation back of amendments switching

25   plaintiffs as opposed to defendants is not explicitly addressed in Rule 15(c), "the

26   attitude taken in [the rule] toward change of defendants extends by analogy to

27   amendments changing plaintiffs." Allied Int'l, Inc. v. Int'l Longshoremen's Ass'n,

28

CIVIL 04-1023 (ADC)                    10


AFL-CIO, 814 F.2d 32, 35 (1ˢᵗ Cir. 1987) (quoting Fed. R. Civ. P. 15 advisory committee note.); also see Young v. Lepone, 305 F.3d 1, 14 (1ˢᵗ Cir. 2002).

        To apply the relation back doctrine to the scenario where plaintiffs rather than defendants are replaced three requirements must be met. First, "the amended complaint must arise out of the conduct, transaction, or occurrence set forth . . . in the original [complaint. Second,] there must be a sufficient identity of interests between the new plaintiff, the old plaintiff, and their respective claims so that the defendants can be said to have been given fair notice of the latecomer's claim against them; and undue prejudice must be absent." Allied Int'l, Inc. v. Int'l Longshoremen's Ass'n, AFL-CIO, 814 F.2d at 35-36 (citing Raynor Bros. v. Am. Cyanamid Co., 695 F.2d 382, 384-385 (9ᵗʰ Cir. 1982); Staren v. Am. Nat'l Bank & Trust Co., 529 F.2d 1257, 1263 (7ᵗʰ Cir. 1976); Unilever (Raw Materials) Ltd. v. M/T Stolt Boel, 77 F.R.D. 384, 390-91 (S.D.N.Y. 1977). See also 3 J. Moore, Moore's Federal Practice ¶ 15.15 [4.-2] (2d ed. 1984)).

        With respect to the first factor, plaintiffs' claim for declaratory judgment rests on a carbon copy of identical facts as those brought when ING Groep NV was a captioned plaintiff namely that the craft "was not owned exclusively by the defendants at the inception of the policy; the total loss of the "GABRIELLA" was caused by, and/or was the result of: wear and tear, gradual deterioration and/or lack of maintenance; that the vessel's fire extinguishing equipment had not been inspected nor certified within the preceding year and the automatic engine room fire extinguishing system had been disconnected prior to the casualty; that the defendants failed to exercise due diligence to properly manage or maintain the vessel in seaworthy condition after the inception of the policy; that defendants refused to cooperate with plaintiffs and refused to submit to an under oath

CIVIL 04-1023 (ADC)                    11

examination as per the express terms of the policy; and finally that the main engine exhaust system of the vessel was not in compliance with the National Fire Protection Association and that the main engine exhaust system had manufacturing and/or design and/or latent defects." (Docket No. 118, at 4-5; see also Docket No. 63-1, at 5-6, ¶ 17-22.)[8]

Here, the claims do not change after the amended complaint. Co-plaintiff ING Insurance SA replaced the initial co-plaintiff, ING Groep NV. Simply stated, each complaint reflects noncompliance with the terms, conditions and warranties contained in the insuring agreement and it is still plaintiffs' contention that said non-compliance with most of these policy provisions renders the policy void. Thus, the first element of the relation back doctrine is clearly satisfied.

With respect to the identity of interest between ING Groep NV and the newly acquired plaintiffs vis-a-vis the amended complaint the nexus is apparent. Both former plaintiff, ING Groep NV, and current plaintiff, ING Insurance SA, operate within the same practice group in the European and international marine insurance industry. ING Insurance SA is a member of ING Groep NV, which is a European holding company. In relation to this case and based on the relationship between the current and former plaintiffs a series of transactions occurred which explains the alleged "clerical mistake."

In retrospect, it is clear that the confusion arises when TLD agreed to acquire Belmarine's risks in the yacht industry.[9] Notably, when TLD acquired the risks the

---

[8]    See supra, note 2.

[9]    Both TLD and Belmarine are marine insurance claims managers which, in essence, means that they are agents who represent the principal insurance companies and in such capacity "assess, settle, or dispute claims."

CIVIL 04-1023 (ADC)                    12

attorneys representing the insurer received information from TLD that ING Groep
NV was the plaintiff/insurer.  Later, Belmarine's claims manager, Mr. Alexander
Mark Thomas, informed TLD that in fact ING Groep NV was a holding company of
which the proper plaintiff ING Insurance SA was a member.  Once notified of the
error, the attorneys filed a motion for leave to amend the complaint for declaratory
judgment thereby properly putting defendants on notice of the error.  (Docket No.
61-1.)

　　　Because it has been established that there exists a sufficient nexus between
ING Groep NV and ING Insurance SA, and because the discrepancy at issue is
clearly explained, I find not only that there has been fair notice to the defendants
but also that they have not been prejudiced in any way, except to have to defend
the lawsuit.  Thus, I deem the second element to be similarly satisfied.

　　　The claims are virtually identical in both the original and amended
complaint. Therefore, defendants will not be prejudiced or inconvenienced with
additional discovery nor will they have to defend, if at all, against substantially
different claims with the introduction of ING Insurance SA as plaintiffs.

　　　I purposefully avoid the laches argument only because after considering all
of the defendants' arguments and plaintiffs' explanations, the reasonable, or at
least, a reasonable, sensible, and economical manner to correct the error, aside
from substitution of party, is to amend the complaint to include the correct
plaintiff.  The lawsuit was always authorized notwithstanding the incorrect
plaintiff.  There has been no creation of a new contract or a de facto substitution

---

Moreover, it is plaintiffs' contention (undisputed by defendants) and
arguably a judicially noticed fact that attorneys in the insurance industry
deal with claims adjusters (as agents) not directly with the plaintiff insurers
(as principals).

CIVIL 04-1023 (ADC)                           13

of parties to the insurance contract.  No new or altered relationship has been created among the parties.  There has been no subterfuge, no spectre of skullduggery to haunt the defendants or the court.

## V.  CONCLUSION

In view of the aforementioned, I recommend that defendants' motion to dismiss (Docket No. 97) be DENIED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 9th day of May, 2006.


                              S/ JUSTO ARENAS
                    Chief United States Magistrate Judge